_____

In re: ERIKA V. BECKER
      SCOTT W. BECKER                                           Chapter 7
                                   Debtor.

                                               Case No. 23-25123

LISA GOLDMAN,

        Plaintiff,
v.

ERIKA V. BECKER,

        Defendant.

_____

## COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT
_____

Lisa Goldman ("Goldman"), plaintiff, as and for a complaint against Erika V. Becker ("Becker"), debtor-defendant, respectfully represents:

### STATEMENT OF JURISDICTION

1. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is an action to declare the debtor's debt to the creditor non-dischargeable under 11 U.S.C. § 523(a)(6), and as such, this is a core proceeding.

2. Venue is appropriate in this Court pursuant to 28 U.S.C § 1409(a).

3. This is an adversary proceeding as defined by Fed. R. Bankr. P. 7001(6).

4. The plaintiff Lisa Goldman is a person with a residence located at 5609 Medical Circle, Suite 101, Madison, WI 53719, and domicile in Madison, Wisconsin and is the assignee of Doniel Carter of the judgment and claims described herein.

5. The defendant Evica V. Becker is a person who resides and has a domicile at 924 W. 11th Avenue, Oshkosh, WI 54902 and is a debtor in this bankruptcy case.

## STATEMENT OF FACTS

6. The judgment assignor, Doniel Carter ("Carter"), all times relevant herein was an adult resident of the State of Wisconsin and an inmate under the supervision of the State of Wisconsin Department of Corrections at Fox Lake Correctional Institution W10237 Lake Emily Rd., Fox Lake, Wisconsin ("Fox Lake").

7. At all times relevant herein, debtor-defendant Becker (f/k/a Erika Watson f/k/a Erika Gransell) was an adult resident of the State of Wisconsin residing at 1715 W. Wisconsin Ave., Appleton, Wisconsin, and employed by the State of Wisconsin Department of Corrections as a sergeant correctional officer at Fox Lake.

8. Among Becker's duties as a sergeant correctional officer were to perform as a lead worker for other correctional officers, and to perform all other functions of a correctional officer, including maintaining security, directing the program activities of inmates, supervising inmates, orienting inmates, monitoring inmate activities, assisting inmates in problem solving, and writing and maintaining inmate records and reports.

9. As of 2012, Becker had substantial experience as a sergeant correctional officer and worked in multiple prison environments. Becker worked as a prison guard for the State of Wisconsin commencing in 1996 and was promoted to sergeant correctional officer in 2004.

10. Becker was familiar with and agreed to the fraternization policy at Fox Lake and other Wisconsin state correctional institutions.

11. The fraternization policy at Fox Lake Correctional Institution does not allow a guard to have personal contact with an inmate, one-to-one conversations, knowingly forming close friendships, corresponding or communicating with an inmate, or extending promises or special consideration or treatment to an inmate.

12. Carter was incarcerated at Fox Lake from March 2012 until on or about May 17, 2012. Carter was housed in housing unit 10.

13. Becker worked the third shift the entire time that Carter was at Fox Lake.

14. Becker knew Carter from his previous incarceration at Waupun Correctional Institution where she had worked before.

15. While at Fox Lake, Carter had frequent conversations with Becker on the nights that Becker worked in unit 10.

16. On at least two occasions, Carter was given magazines by another correctional officer that contained notes from Becker. On one of these occasions the magazine contained a picture of Becker's naked breasts. The notes said how much Becker liked Carter and what time she would take him to the social worker room, kitchen, or utility room. On one of the magazines a phone number was written that Carter was to call. When Carter actually was able to and did call the number, Becker answered.

17. Some of the tasks assigned to Carter by Becker included legitimate tasks such as mopping the floor in and around unit 10 and the kitchen. Other tasks were a combination of a legitimate task with an illegitimate element such as mopping the floor without a shirt on so Becker could look at his body.

18. On occasion, Becker told Carter what time and where to meet her and what she wanted Carter to do. On several occasions Carter met with Becker and at Becker's direction engaged with Becker in touching Becker, having oral sex with Becker, masturbating in front of Becker and sucking Becker's breasts and toes.

19. On other occasions the other correctional officer told Carter that sergeant Gransell ("Becker") needed Carter to do something in the social worker room or the janitor's closet. Carter went there and met Becker and engaged in the acts described above that Becker wanted.

20. Becker knew that Carter had applied for and had a pending sentence modification motion in Milwaukee County Circuit Court to modify and lessen his sentence with credit for time served that would give him an immediate release from incarceration. Carter's application was the result of him having provided evidence against another criminal defendant.

21. When Carter said he did not want to do what Becker wanted, Becker told Carter that if he refused, she would find a way to take away Carter's privileges and that she knew the Milwaukee judge's bailiff and that she could interfere with Carter's pending sentence modification motion.

22. Becker engaged in the above-described actions and threats with Carter in disregard of the fraternization policy at Fox Lake Correctional Institution.

23. On or about May 17, 2012, Fox Lake correctional officers discovered a letter partially visible in Becker's backpack while it rested on top of the officers' shared desk in the area of Carter's housing unit. The letter was written by Becker, describing Carter and her fondness for him. The officers showed the letter to their supervisor, a Wisconsin Department of Corrections captain at Fox Lake, who collected Becker's belongings and inspected them to see what else was hidden in her backpack.

24. The supervisor determined the letter was likely written by Becker for Carter along with pictures of Becker in modest dress or lingerie found in her backpack. The supervisor confronted Becker on or about May 17, 2012 in his office, and rather than answer questions, Becker immediately resigned the same day.

25. After the letter was discovered, Carter was immediately placed in lock-up at Fox Lake and then transferred a few hours later that morning to solitary confinement at Waupun.

26. While at Waupun, Carter was stripped of all of his rights for approximately one month. Carter could not send mail, could not have recreation time, could not see other inmates, could not work at his janitorial job, could not watch television.

27. During his solitary confinement at Waupun, Carter was prohibited from attending the previously scheduled sentence modification hearing in Milwaukee County Circuit Court, where it was expected that he would receive credit for time served on his current prison sentence for an early release from institutionalization.

28. Carter's sentence modification hearing was rescheduled. Carter appeared by video wearing a red jump suit, a color reserved for inmates who are serving time

in solitary confinement or having been assessed other discipline as a problem inmate. The judge observed Carter in the red jump suit, which signified that he was a problem inmate. The appearance in a red jump suit likely affected the expected credit for time served, resulting in Carter remaining incarcerated for more than a year after the hearing.

## THE JUDGMENT

29. On May 9, 2018, Carter filed a Summons and Complaint against the State of Wisconsin Department of Corrections and Becker in the Eastern District of Wisconsin, Case No. 18-cv-0727, alleging a violation of Carter's Fourteenth Amendment and Eighth Amendment rights by Becker subjecting him to performing degrading tasks with the threat of punishment if he refused to do so.

30. On November 4, 2021, a jury verdict was rendered finding that Becker was deliberately indifferent to Carter's health and safety while he was a prisoner and she was a correctional officer at the Fox Lake Correctional Institution, and awarded punitive damages in the amount of $125,000. See attached Exhibit A.

31. The jury finding that Becker was deliberately indifferent to Carter means that the jury found that Becker actually knew of a substantial risk of harm to Carter and that she consciously disregarded this risk through her actions.

32. The jury award of punitive damages means that the jury found that Becker's conduct was malicious or in reckless disregard of Carter's rights.

33. Judgment on the jury verdict was rendered for $125,000 on November 5, 2021. See attached Exhibit B. Attorney fees were awarded by the Court on June 16, 2022 in the amount of $141,292.38. See attached Exhibit C. The total principal balance due the plaintiff on the judgment is $266,292.38 (the "judgment"), exclusive of taxable costs. See attached Exhibits D and E. Prejudgment interest at the Federal rate of interest on the judgment is claimed to the date of determination of this complaint.

34. Plaintiff Lisa C. Goldman is the assignee of Carter of the judgment with full right to pursue the judgment and all claims relating to the judgment. See attached Exhibit F.

## NON -DISCHARGEABILITY OF DEBT – 11 U.S.C. § 523(A)(6)

35. As a result of Becker's actions and threats, Carter was placed in lock-up, solitary confinement, lost all privileges, was unable to attend his scheduled sentence modification hearing, and had to later appear as a disciplined inmate in a red jump suit before the court at his sentence modification hearing, which likely resulted in Carter not being able to obtain an earlier release from institutionalization.

36. It was likely and substantially certain that Becker's disregard of the fraternization policy and her actions described herein resulted in Carter being penalized, punished, facing discipline and/or being placed in solitary confinement pending an investigation.

37. It was likely and substantially certain that Becker's disregard of the fraternization policy and her actions placed Carter at risk of substantial harm to his upcoming resentencing hearing and possible immediate release from incarceration.

38. Becker knew that her disregard of the fraternization policy and her actions were substantially certain to result in Carter being penalized, punished, facing discipline and being placed in solitary confinement pending an investigation.

39. Becker knew that her actions and threats would injure Carter, would result in Carter being subjected to discipline and deprivation of personal liberty and were substantially certain to injure his chances at his sentence modification hearing to obtain immediate release from institutionalization.

40. Becker's disregard of the fraternization policy, her actions and her threats regarding Carter's pending sentence modification evince a deliberate, knowing and intentional motive to inflict injury on Carter.

41. Becker's disregard of the fraternization policy, her actions and her threats to Carter if he did not comply with her requests were willful and malicious and

substantially certain to result in personal injury and deprivation of personal liberty injury to Carter.

42. Becker's disregard of the fraternization policy, her actions and her threats to Carter if he did not comply with her requests were made without just cause or excuse.

43. Becker's disregard of the fraternization policy, her actions and by threatening Carter if he did not comply with her requests caused Carter personal injury and deprivation of personal liberty injury, pain and suffering, mental anguish and emotional distress damages in an amount to be determined.

44. Carter's damages, the judgment, and the debt represented by the judgment against Becker are non-dischargeable pursuant to 11 U.S.C. Section 523(a)(6).

WHEREFORE, plaintiff demands judgment:

a. Determining Carter's damages, the judgment, and the debt represented by the judgment, together with interest at the federal judgment rate, to be non-dischargeable under 11 U.S.C. § 523(a)(6).

b. For attorney's fees, costs and disbursements, and for such other and further relief as the Court may deem just and equitable.

Dated: January 25, 2024.

_____
Roger Sage
Plaintiff's Attorney

Attorney Roger Sage
30 W. Mifflin St., Suite 1001
Madison, WI 53703
(608) 258-8855
rsage@rogersge.com
State Bar # 01009033